A TRUE COPY ATTEST

DEPUTY SHERIFF
Middlesex County

11/7/25

DATE OF SERVICE

## Commonwealth of Massachusetts

MIDDLESEX, SS.

TRIAL COURT OF THE COMMONWEALTH
SUPERIOR COURT DEPARTMENT
CIVIL DOCKET NO. 2481CV02937

Juliana N. Anyanwu, M.D, PLAINTIFF(S),

V.

Cambridge Health Alliance, DEFENDANT(S)
Foundation, Inc., et al



### SUMMONS

THIS SUMMONS IS DIRECTED TO Cambridge Health Alliance . (Defendant's name)
Physicians Organization, Inc. a/k/a Cambridge Health Alliance
**You are being sued.** The Plaintiff(s) named above has started a lawsuit against you. A copy of the
Plaintiff's Complaint filed against you is attached to this summons and the original complaint has been
filed in the Middlesex Superior Court. **YOU MUST ACT PROMPTLY TO PROTECT YOUR RIGHTS.**

1. **You must respond to this lawsuit in writing within 20 days.** If you do not respond, the court may decide
   the case against you and award the Plaintiff everything asked for in the complaint. You will also lose the
   opportunity to tell your side of the story. You must respond to this lawsuit in writing even if you expect
   to resolve this matter with the Plaintiff. **If you need more time to respond, you may request an
   extension of time in writing from the Court.**

2. **How to Respond.** To respond to this lawsuit, you must file a written response with the court **and** mail a
   copy to the Plaintiff's Attorney (or the Plaintiff, if unrepresented). You can do this by:
   a. Filing your **signed original** response with the Clerk's Office for Civil Business, Middlesex Superior Court,
      200 Tradecenter, Woburn, MA 01801 (address), by mail or in person, **AND**
   b. Delivering or mailing a **copy** of your response to the Plaintiff's Attorney/Plaintiff at the following
      address: 220 Broadway, Ste. 404, Lynnfield, MA 01940

3. **What to include in your response.** An **"Answer"** is one type of response to a Complaint. Your Answer
   must state whether you agree or disagree with the fact(s) alleged in each paragraph of the Complaint.
   Some defenses, called affirmative defenses, must be stated in your Answer or you may lose your right to
   use them in court. If you have any claims against the Plaintiff (referred to as **counterclaims**) that are
   based on the same facts or transaction described in the Complaint, then you must include those claims
   in your Answer. Otherwise, you may lose your right to sue the Plaintiff about anything related to this
   lawsuit. If you want to have your case heard by a jury, you must **specifically** request a jury trial in your
   Answer or in a written demand for a jury trial that you must send to the other side and file with the
   court no more than 10 days after sending your Answer. You can also respond to a Complaint by filing a
   **"Motion to Dismiss,"** if you believe that the complaint is legally invalid or legally insufficient. A Motion
   to Dismiss must be based on one of the legal deficiencies or reasons listed under **Mass. R. Civ. P. 12.** If
   you are filing a Motion to Dismiss, you must also comply with the filing procedures for "Civil Motions"
   described in the rules of the Court in which the complaint was filed, available at
   www.mass.gov/courts/case-legal-res/rules of court.

| CIVIL TRACKING ORDER (STANDING ORDER 1- 88) | DOCKET NUMBER 2481CV02937 | Trial Court of Massachusetts The Superior Court |
|---|---|---|

| CASE NAME: Anyanwu, MD, Juliana N vs. Cambridge Health Alliance Foundation, Inc. et al | Michael A. Sullivan, Clerk of Court Middlesex County |
|---|---|
| TO: Richard Cullin Chambers, Jr., Esq. Chambers Law Office 220 Broadway Suite 404 Lynnfield, MA 01940 | COURT NAME & ADDRESS Middlesex County Superior Court - Woburn 200 Trade Center Woburn, MA 01801 |

## TRACKING ORDER - F - Fast Track

You are hereby notified that this case is on the track referenced above as per Superior Court Standing Order 1-88. The order requires that the various stages of litigation described below must be completed not later than the deadlines indicated.

### STAGES OF LITIGATION                           DEADLINE

| | SERVED BY | FILED BY | HEARD BY |
|---|---|---|---|
| Service of process made and return filed with the Court | | 02/05/2025 | |
| Response to the complaint filed (also see MRCP 12) | | 03/07/2025 | |
| All motions under MRCP 12, 19, and 20 | 03/07/2025 | 04/07/2025 | 05/06/2025 |
| All motions under MRCP 15 | 03/07/2025 | 04/07/2025 | 05/06/2025 |
| All discovery requests **and depositions** served and non-expert depositions completed | 09/03/2025 | | |
| All motions under MRCP 56 | 10/03/2025 | 11/03/2025 | |
| Final pre-trial conference held and/or firm trial date set | | | 03/02/2026 |
| Case shall be resolved and judgment shall issue by | | | 11/09/2026 |

**The final pre-trial deadline is not the scheduled date of the conference**. You will be notified of that date at a later time.

**Counsel for plaintiff must serve this tracking order on defendant before the deadline for filing return of service.**

This case is assigned to

| DATE ISSUED 11/07/2024 | ASSISTANT CLERK | PHONE (781)939-2745 |
|---|---|---|

| CIVIL ACTION COVER SHEET | DOCKET NUMBER 2 248CV2937 | Massachusetts Trial Court Superior Court |
|---|---|---|
| | | COUNTY Middlesex Superior Court (Woburn) |

| Plaintiff: Juliana N. Anyanwu, M.D. | Defendant: Cambridge Health Alliance Foundation, Inc., and Cambridge Health Alliance Physicians Organization, Inc., a/k/a Cambridge Health Alliance |
|---|---|
| ADDRESS: 55 Lewis Street, East Boston, MA 02128 | |
| | ADDRESS: 1493 Cambridge Street, Cambridge, MA 02139 |

| Plaintiff Attorney: Richard C. Chambers, Jr., Esq. | Defendant Attorney: |
|---|---|
| ADDRESS: 220 Broadway, Suite 404, Lynnfield, MA 01940 | ADDRESS: |
| BBO: 651251 | BBO: |
| Plaintiff Attorney: Joseph Spinale, Esq. | Defendant Attorney: |
| ADDRESS: 220 Broadway, Suite 404, Lynnfield, MA 01940 | ADDRESS: |
| BBO: 548547 | BBO: |

### TYPE OF ACTION AND TRACK DESIGNATION (see instructions section on next page)

| CODE NO. | TYPE OF ACTION (specify) | TRACK | HAS A JURY CLAIM BEEN MADE? |
|---|---|---|---|
| D09 | Interference in Contractual Relations | F | ☒ YES  ☐ NO |

*If "Other" please describe:

Is there a claim under G.L. c. 93A?  ☐ YES  ☒ NO          Is there a class action under Mass. R. Civ. P. 23?  ☐ YES  ☒ NO

### STATEMENT OF DAMAGES REQUIRED BY G.L. c. 212, § 3A

The following is a full, itemized and detailed statement of the facts on which the undersigned plaintiff or plaintiff's counsel relies to determine money damages. (Note to plaintiff: for this form, do not state double or treble damages; indicate single damages only.)

### TORT CLAIMS

A. Documented medical expenses to date

|  |  |  |
|---|---|---|
| 1. Total hospital expenses | | $0.00 |
| 2. Total doctor expenses | | $0.00 |
| 3. Total chiropractic expenses | 11/7/2024   MG **RECEIVED** | $0.00 |
| 4. Total physical therapy expenses | | $0.00 |
| 5. Total other expenses (describe below) | | $0.00 |
| | Subtotal (1-5): | $0.00 |
| B. Documented lost wages and compensation to date | | $0.00 |
| C. Documented property damages to date | | $0.00 |
| D. Reasonably anticipated future medical and hospital expenses | | $0.00 |
| E. Reasonably anticipated lost wages | | $0.00 |
| F. Other documented items of damages (describe below) | | $5,000,000.00 |
| | TOTAL (A-F): | $5,000,000.00 |

G. Briefly describe plaintiff's injury, including the nature and extent of the injury:

### CONTRACT CLAIMS

☐ This action includes a claim involving collection of a debt incurred pursuant to a revolving credit agreement. Mass. R. Civ. P. 8.1(a).

| Item # | Detailed Description of Each Claim | Amount |
|---|---|---|
| 1. | | |
| | Total | |

uperior Court - Middlesex
ocket Number

Signature of Attorney/Self-Represented Plaintiff: X /s/ Richard C. Chambers, Jr., Esq. | Date: November 7, 2024

RELATED ACTIONS: Please provide the case number, case name, and county of any related actions pending in the Superior Court.

**CERTIFICATION UNDER S.J.C. RULE 1:18(5)**

I hereby certify that I have complied with requirements of Rule 5 of Supreme Judicial Court Rule 1:18: Uniform Rules on Dispute Resolution, requiring that I inform my clients about court-connected dispute resolution services and discuss with them the advantages and disadvantages of the various methods of dispute resolution.

Signature of Attorney: X /s/ Richard C. Chambers, Jr., Esq. | Date: November 7, 2024

COMMONWEALTH OF MASSACHUSETTS

MIDDLESEX, ss.

SUPERIOR COURT DEPARTMENT
CIVIL ACTION NO.:

248CV2937

**JULIANA N. ANYANWU, M.D.,**

Plaintiff,

v.

**CAMBRIDGE HEALTH ALLIANCE**
**FOUNDATION, INC., and CAMBRIDGE**
**HEALTH ALLIANCE PHYSICIANS**
**ORGANIZATION, INC., a/k/a**
**CAMBRIDGE HEALTH ALLIANCE**

**RECEIVED**    MG 11/7/2024

Defendants.

### COMPLAINT AND JURY TRIAL DEMAND

Now comes the Plaintiff, Juliana N. Anyanwu, M.D., by and through undersigned

counsel, and for her complaint of discrimination against Cambridge Health Alliance states and

avers as follows:

### INTRODUCTION

1. Plaintiff Juliana N. Anyanwu, (hereinafter, "Dr. Anyanwu" or "Plaintiff"), a Licensed

    Physician and lifelong practicing Christian, seeks damages against the Defendants' for

    unlawful discrimination and the wrongful termination of her employment in violation of

    Title VII of the Civil Rights Act of 1964 and M.G.L. c. 151B, § 4(1A).

2. Plaintiff objected to receiving a Covid-19 vaccine based on her sincerely held religious

    beliefs, including the fact that aborted fetus tissue was used in the research and

    development of the Covid-19 Vaccines, and she submitted a request for a Religious

    Accommodation with attachments ("**Exhibit A**") more particularly detailing her religious

1

beliefs which was summarily denied by Defendant who terminated her employment on November 17, 2021.

## I.    PARTIES

1. Dr. Anyanwu is a Licensed Physician who was employed by Defendants for over two (2) years as a Staff Pediatrician until she was unlawfully and wrongly terminated on or about November 17, 2021.

2. Defendant Cambridge Health Alliance Foundation, Inc. (hereinafter, "CHAF") is a corporation with the "purpose to benefit the charitable, scientific and educational purposes of the Cambridge Public Health Commission ("CPHC") doing business as Cambridge Health Alliance, or any successor thereto, and any corporations ("Affiliates") which are described in sections 501(c)(3) and any of 509(a)(1), (2) or (3) of the Internal Revenue Code of 1986, as amended, ("the Code"), of which CPHC is a member" and has a principal office location of 1493 Cambridge Street, Cambridge, Massachusetts 02139.

3. Defendant Cambridge Health Alliance Physicians Organization, Inc. (hereinafter, "CHAPO") is a Massachusetts Corporation with its principal offices at 1493 Cambridge Street, Cambridge, Massachusetts 02139 and uses the name Cambridge Health Alliance.

4. The Chief Executive Officer (CEO) for each Defendant is Mr. Assaad J. Sayah, M.D.

5. CHAF and CHAPO responded to Plaintiff's claims with the Massachusetts Commission Against Discrimination (hereinafter, "MCAD") as Cambridge Health Alliance.

6. Upon information and belief, CHAF and CHAPO have an interchangeable employer/employee relationship with Plaintiff.

7. Presumably, CHAF and CHAPO are "employers" within the meaning of 42 U.S.C. § 2000e (b) and M.G.L. c 151B, § 1(5), with more than fifteen (15) employees.

8. Collectively, CHAF and CHAPO are the Defendants in this matter and hereafter are collectively referred to as "CHA" or "Defendants".

9. The Defendants negligently, unlawfully, and wrongly terminated Dr. Anyanwu when it denied her request for a Religious Exemption and Accommodation, causing her to suffer significant damages including loss of her future earnings and retirement.

10. The Defendants wrongly terminated Dr. Anyanwu's employment on or about November 17, 2024.

## II. MASSACHUSETTS COMMISSION AGAINST DISCRIMINATION ("MCAD") CHARGE

11. Dr. Anyanwu filed timely charges with the MCAD who then notified the United States Equal Employment Opportunity Commission (hereinafter, "EEOC").

12. The EEOC issued Dr. Anyanwu her "Right-to-Sue" notice on or about October 2, 2024, a copy of which is attached as **Exhibit B**.

13. Dr. Anyanwu brings this lawsuit within ninety (90) days of receipt of her EEOC "Right-to-Sue" notice. All preconditions for filing this lawsuit have been performed or have occurred.

## III. FACTS

3

14. Dr. Anyanwu was employed by CHA for over two (2) years, as an Outpatient
    Pediatrician at CHA Cambridge Pediatrics and CHA East Cambridge Care
    Center, when she was unlawfully and wrongly terminated by Defendant based
    upon her sincerely held religious belief that *aborted fetus tissue was used in the
    research and development of the Covid-19 vaccines.*

15. Dr. Anyanwu alleges that the Defendants' unconstitutional Mandatory Covid-19
    Vaccine Policy, and the rejection of her religious exemption based on her
    sincerely held religious beliefs was a tactic to "*out her as a practicing Christian*"
    and to then terminate her employment causing her to suffer great pecuniary and
    emotional damages.

16. As of June 15, 2021, the former Massachusetts Governor, Charles D. Baker,
    (hereinafter, "Baker"), terminated the "Covid-19 State of Emergency." As a
    matter of law and fact, **after June 15, 2021**, the Commonwealth of Massachusetts
    declared there was no longer any "Covid-19 Emergency" in existence.

17. On August 16, 2021, CHA announced its mandatory Covid-19 Vaccination Policy
    (hereinafter, the "Vaccine Policy"), which required that all CHA staff be fully
    vaccinated against Covid-19 by October 18, 2021.

18. The Vaccine Policy allowed employees with medical and/or religious reasons
    conflicting with the Vaccine Policy to submit an accommodation request to be
    exempted from vaccination.

19. On or about October 1, 2024, Dr. Anyanwu submitted her request for a Religious
    Exemption and Accommodation to Defendant ("**Exhibit A**") and incorporated
    herein by reference in its entirety.

4

20. Dr. Anyanwu followed CHA's protocol for applying for a Religious Exemption and Accommodation.

21. In such request, Dr. Anyanwu specifically stated that she is a practicing Christian and could not take the COVID Vaccine because it conflicts with her sincerely held religious beliefs, including the fact that aborted fetal cells were used in the testing of the vaccines and that she cannot have the vaccines invade and defile the body that was given her by God, among other reasons stated therein which are, again, all incorporated herein by reference.

22. On or about October 15, 2021, CHA denied Dr. Anyanwu's request for a Religious Exemption and Accommodation.

23. The denial of Dr. Anyanwu's Religious Exemption and Accommodation caused her extreme anguish, an enormous amount of stress, anxiety, sleepless nights, and deep, unrelenting sadness as she realized she would have to choose between her sincerely held religious beliefs and a job she loved.

24. Essentially, Dr. Anyanwu was given a 'Hobson's Choice', when she was forced to choose between her sincerely held Christian religious beliefs and her livelihood.

25. Dr. Anyanwu believed she was being unjustly coerced and was traumatized by the prospect of not having a job.

26. Dr. Anyanwu's service during this crisis greatly benefited the Defendant by enabling them to keep its doors open and continue serving the community as it was tasked to do.

27. Defendant summarily denied Plaintiff **any** Accommodation.

5

28. Upon information and belief, Defendants have approved requests for medical and/or religious exemption requests from taking the Covid-19 vaccines submitted by other employees of the Defendants.

29. As a result of Dr. Anyanwu's unlawful and wrongful termination by the Defendant, she suffered great financial harm and extreme mental anguish and stress.

30. CHA should have and could have accommodated Dr. Anyanwu to avoid her suffering damages.

31. Instead, Dr. Anyanwu was denied her request for a Religious Exemption and Accommodation because of her sincerely held religious beliefs.

32. Dr. Anyanwu's termination from CHA resulted in her being harassed, violated, and discriminated against because she asserted her sincerely held religious beliefs.

33. Dr. Anyanwu was and still is devastated by her termination from CHA and has suffered extreme damages as a result of CHA's actions including, but not limited to, lost wages, lost pension, lost benefits, costs related to survival without income, as well as extreme and severe emotional stress to her and her family.

## THE COVID-19 VACCINES ARE NOT EFFECTIVE AT STOPPING THE SPREAD OF THE DISEASE

34. Following an announcement by the Food and Drug Administration (hereinafter, "FDA") on August 2, 2021, claiming that vaccines were ninety-one percent (91%) effective in preventing Covid-19 (Pfizer), it became immediately clear that was not true.

6

35. Illustrating by example are the following list of visible persons that became
infected by Covid-19 despite having been injected with a Covid-19 vaccine along
with the date their infection was announced:

| | |
|---|---|
| 08-19-2021 | U.S. Senator John Hickenlooper |
| | U.S. Senator Angus King |
| | U.S. Senator Roger Wicker |
| 10-19-2021 | Department of Homeland Security Secretary Alejandro Mayorkas |
| 12-19-2021 | U.S. Senator Elizabeth Warren |
| 01-02-2022 | Department of Justice Secretary Lloyd Austin |
| 03-13-2022 | U.S. President Barack Obama |
| 03-31-2022 | CIA Director William Burns |
| 04-05-2022 | U.S. Attorney General Merrick Garland |
| 04-07-2022 | U.S. House Speaker Nancy Pelosi |
| 04-09-2022 | U.S. Department of Agriculture Secretary Tim Vilsack |
| 04-26-2022 | U.S. Vice-President Kamala Harris |
| 05-04-2022 | U.S. Secretary of State Anthony Blinken |
| 06-01-2022 | U.S. Labor Secretary Marty Walsh |
| 06-15-2022 | Dr. Anthony Fauci |
| 06-2022 | U.S. Senator Wicker for the 3rd time (02-2022) |
| 07-10-2022 | U.S. Senate Majority Leader Schumer |
| 07-21-2022 | U.S. President Joseph Biden |
| 10-22-2022 | CDC Director Rochelle Walensky |

7

36. Public Health Officials now acknowledge the fallacy of claims of protection

afforded **by vaccines against Covid-19.**

a. **Dr. Deborah Birx:** (Former White House Coronavirus Response Coordinator):

"I knew these vaccines were not going to protect against infection and I think we

overplayed the vaccines". **https://youtu.be/8aYqTIg1A**

b. **Dr. Anthony Fauci:**

"We know that people get infected and then get reinfected and people get

vaccinated, and they get infected. So, immunity isn't measured in decades or

lifetimes. It's measured in several months."

**https://www.marketwatch.com/articles/Anthony-fauci-covid-19-biden-**

**immunity-51658437525?shtied=nf-rss**

37. As of August 2020, the Centers for Disease Control and Prevention (hereinafter,

"CDC") guidance on Covid-19 protection changed to eliminate differentiation

based on whether a person received vaccination and now concede that so-called

Covid-19 vaccines do not prevent those injected with same from contracting,

suffering and/or spreading the Covid-19 disease.

38. The majority of people now hospitalized for Covid-19 related issues have

received vaccinations and caught the Covid-19 virus anyway.

39. Defendant's Vaccine Policy was based on false and deceptive claims that the

vaccine was required to prevent employees from contracting the virus and

spreading it to others, all of which was known by them.

40. Increasingly, it is becoming clear that Covid-19 vaccines did not afford the protection to the person injected or those they came into contact with and, in fact, have both short and long-term adverse effects on the injected person.

41. Defendant terminated/coerced retirement on Dr. Anyanwu for resisting being injected due to her sincerely held religious beliefs; and Defendant refused to provide an accommodation to Dr. Anyanwu by not affording the use of masks and periodic testing, stating same to be inferior to the vaccine.

42. Defendant's degradation of masks and periodic testing by labeling them as "inferior" and unacceptable accommodation, along with Defendant's unrealistic reliance on experimental *untested, mRna* vaccines, place Defendant's historical position in question and now expose serious liberties taken by Defendant with the life and well-being of Dr. Anyanwu, her family, and her contacts.

43. As a result of Defendant's negligence and intentional acts, Dr. Anyanwu suffered damages financially, emotionally, psychologically, and lost reputation.

**CLAIM FOR RELIEF**

**COUNT I**
**VIOLATION OF M.G.L. CHAPTER 151B RELIGIOUS DISCRIMINATION AND VIOLATION OF TITLE VII**

44. Dr. Anyanwu re-alleges the foregoing Paragraphs 1-43 as if set forth again here.

45. Dr. Anyanwu was very specific, honest and conveyed her sincerely held religious beliefs to Defendant in good-faith.

46. Dr. Anyanwu explained in the request attached as Exbibit A hereto her sincerely held religious beliefs were based in Christianity and her religious belief that *aborted fetus tissue was used in the research and development of the Covid-19*

9

*Vaccines* which precluded her from taking any Covid-19 vaccine, specifically because of the development and/or testing of the Covid-19 vaccine using cell lines from tissues of aborted human fetuses.

47. In the same document attached, Dr. Anyanwu made clear her inability to take the vaccine for reason that doing so would invade and desecrate the body entrusted to her by God.

48. Dr. Anyanwu at all relevant times was engaged in protected activity under M.G.L. Chapter 151 and 42 USC § 2000e *et seq.*

49. Under Title VII, it is unlawful for an employer to "fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of" that individual's religion. 42 U.S.C. § 2000e-2(a)(1). An employer must "reasonably accommodate" an employee's **religious** practice unless such accommodation would impose "undue hardship on the conduct of the employer's business." Id. § 2000e(j). To reiterate: the means to accommodate Dr. Anyanwu would not have cost additionally, as the policies, procedures and equipment were already in place since the beginning of the Covid-19 pandemic.

50. Upon information and belief, Defendant granted one (1) or more exemptions to other employees due to religious or medical reasons.

51. Discrimination is defined as prejudiced, unfair, or unequal treatment of people based on their personal characteristics such as race, **religion**, disability, age, nation of origin, or gender.

10

52. The discriminatory actions of the Defendant resulted in the deterioration of skills, morale, and employer acceptability, placing Dr. Anyanwu in a disadvantaged position within the work force.

53. Defendant wrongly, arbitrarily, and capriciously denied Dr. Anyanwu's request for a Religious Exemption and Accommodation from having to inject herself with the Covid-19 vaccine due to her sincerely held religious beliefs.

54. Defendant at all times knew, or should have known, that the Covid-19 vaccine did not prevent contracting nor spreading of the disease.

**WHEREFORE, PLAINTIFF PRAYS THAT THIS HONORABLE COURT:**

Enter Judgment against Defendant, finding that its conduct was knowingly and negligently in bad faith, with knowledge or reason to know that their acts violated Dr. Anyanwu's Constitutional rights, and caused substantial hardships to her, against public policy and Federal law, for damages as follows:

A. A declaration that Dr. Anyanwu's statutory rights were violated and an order requiring just, proper, and equitable relief;

B. A finding for Dr. Anyanwu for the Count set forth herein and an order for an amount to be determined at the trial of this matter;

C. Compensatory damages in the amount of Five Million Dollars ("$5,000,000.00");

D. Punitive damages in the amount of One Million Dollars ("$1,000,000.00");

E. Award reasonable attorneys' fees and costs of this action to Dr. Anyanwu; and

F. Such other and further relief that this Honorable Court finds meet, just, proper, and equitable.

**PLAINTIFF DEMANDS A TRIAL BY JURY ON ALL ISSUES AND COUNTS.**

11

Respectfully submitted,
The Plaintiff,
Juliana N. Anyanwu, M.D.,
By her attorneys,

DATED: November 7, 2024

/s/ Richard C. Chambers, Jr., Esq.
Richard C. Chambers, Jr., Esq.
BBO#: 651251
Chambers Law Office
220 Broadway, Suite 404
Lynnfield, MA 01940
Office: (781) 581-2031
Cell: (781) 363-1773
Fax: (781) 581-8449
Email: Richard@chamberslawoffice.com

DATED: November 7, 2024

/s/ Joseph Spinale., Esq.
Joseph Spinale, Esq.
BBO#: 548547
Chambers Law Office
220 Broadway, Suite 404
Lynnfield, MA 01940
Office: (781) 581-2031
Cell: (781) 838-1411
Fax: (781) 581-8449
Email: Joe@chamberslawoffice.com

# EXHIBIT A

 

## Religious Exemption Application Form

At Cambridge Health Alliance, our first priority is the safety of our patients and staff. To continue to protect our community, as COVID-19 cases increase across Massachusetts and nationwide, all CHA staff will be required to be fully vaccinated by October 18, 2021. Throughout the pandemic, we have taken every possible step to ensure the wellbeing of our patients and employees and a vaccine mandate will help to provide the safest environment for our staff and the individuals and communities we serve.

Please be aware that individuals that may have beliefs and opinions regarding COVID-19 vaccination will not be granted a religious exemption. A religious exemption from the vaccination requirement will be approved only for a sincerely held belief precluding COVID-19 vaccination that is religious in nature.

To request a religious exemption from COVID-19 vaccination, this form and a letter from your religious leader must be completed and submitted to vaxexemptreq@challiance.org by **October 1, 2021.** Failure to accurately and completely provide the information requested by the deadline may result in the request being denied.

1. Please describe the religious belief that is preventing you from receiving COVID-19 vaccination.

   *see attached*

2. Have you received a religious exemption from CHA's flu vaccination requirement?
   ☐ Yes   ☒ No
   If yes, is the religious belief that prevented you from receiving the flu vaccine the same as the religious belief that is currently preventing you from receiving the COVID-19 vaccination? ☐ Yes   ☐ No

3. Have you received a religious exemption from any other vaccine requirement in the past three years?
   ☐ Yes   ☒ No
   If yes, please provide additional details, including which vaccine(s) the exemption was for, when you were granted the exemption, the religious belief underlying the exemption request and whether you were employed by CHA at the time.

4. Have you ever been approved for any other type of religious accommodation during your employment with CHA?

☐ Yes   ☒ No

If yes, please describe the accommodation that was approved, when this occurred and whether the accommodation is still in effect.

5. Does the religious belief that prevents you from receiving COVID vaccination derive from a recognized religion?

☒ Yes   ☐ No

If yes, please answer the following questions:

   a. Please provide the name of the religion: *Christianity*

   b. Please indicate when you first began to practice this religion: *I was born into it. All of my life I have been a Christian.*

   c. Do you belong to an organization or group affiliated with this religion (e.g., church, mosque, synagogue other group, etc.)? ☒ Yes   ☐ No
   If yes, indicate when you first affiliated with organization or group: *2006*

   If yes, also provide the following information regarding the organization or group:
   Name: *World Changers Church International*

   Address: *2500 Burdett Rd. College Park, GA 30349*

   Phone Number: *770 210 5700*

   Website: *www.worldchangers.org*

6. Does the religious belief identified in Question #1 prevent you from receiving other vaccines or just the COVID-19 vaccines?

☐ All other vaccines    ☒ Some but not all other vaccines    ☐ Only the COVID-19 vaccines?

If your religious belief prevents you from receiving only the COVID-19 vaccines, please explain why. (For example, if there is something about the way that the currently approved COVID-19 vaccines are manufactured that prevents you from receiving it, please identify what that is.)

If your religious belief prevents you from receiving some but not all other vaccines, please identify which vaccines you can receive and which ones you cannot receive, and explain the reason for the difference.

See attached

7. Did you receive the flu vaccine for the most recent flu season? ☐ Yes    ☒ No
If no, when did you last receive the flu vaccine? 2020 flu season

8. Have you received other vaccines in the past? ☒ Yes    ☐ No
If yes, please identify the vaccines you have received most recently and when you received them.
2020 flu vaccine

9. Are there other aspects of your religious belief that impact or prevent you from receiving medical care? ☐ Yes    ☒ No

If yes, please explain.

10. With respect to the religious belief that is preventing you from receiving COVID-19 vaccination:

    a. When did you first come to believe this?

              See attached

    b. Has your religious belief that is preventing you from receiving COVID-19 vaccination changed over time?

      ☒ Yes   ☐ No

    If yes, please explain how it has changed, when it changed and why.

            see attached

11. Please submit your letter from your religious leader (or organization equivalent to religious organization) supporting your belief that your religion prevents you from receiving COVID-19 vaccination. You may also provide additional documentation supporting your application for exemption from the COVID-19 vaccination requirement based on a sincerely held religious belief. Additional documentation may include but is not limited to the following.

    a. Books, pamphlets, text, or other materials that support your religious belief that you are prevented from receiving COVID-19 vaccination.

    b. A personal statement that provides a more in depth description of your belief, its religious nature and why it prevents you from receiving COVID-19 vaccination.

    c. A statement from someone who is familiar with your beliefs confirming how your religious belief prevents you from receiving COVID-19 vaccination.

Any additional documentation that you submit will be considered in conjunction with your exemption request. **Please note that the documentation should be submitted at the same time as your request in order to avoid delays in review and processing your request for exemption.**

By signing below, you certify that the information provided in this form is both complete and accurate and you understand that any intentional misrepresentation contained in this request may result in disciplinary action, including employment termination.

Signature: _Juliana N. Anyanwu_

Printed Name: JULIANA N. ANYANWU

Date: 9/29/21

**1. Please describe the religious belief that is preventing you from receiving COVID-19 vaccination.**

I am a Christian. I take time to get still and hear God's voice. Psalms 46:10 (KJV) says Be still and know that I am GOD. Proverbs 3:5-6 (KJV) states to³ Trust in the LORD with all thine heart; and lean not unto thine own understanding.⁶ In all thy ways acknowledge him, and he shall direct thy paths. That is how I live my life. I have always trusted and continue to trust in God's guidance. I do not want to go against it. God has not placed it in my heart to get the vaccine. Furthermore, the development and/or testing of COVID-19 vaccines involved using cell lines from tissues of aborted human fetuses. I feel that it is unclean and I do not believe in incorporating anything which I feel is unclean into my body. Romans 12:1 says I beseech you therefore, brethren, by the mercies of God, that ye present your bodies a living sacrifice, holy, acceptable unto God, which is your reasonable service.

In the book of Daniel (Dan 1:8 KJV) it states "But Daniel purposed in his heart that he would not defile himself with the portion of the king's meat, nor with the wine which he drank. Therefore he requested of the prince of the eunuchs that he might not defile himself". I too am requesting not to defile myself with the vaccinations.

**6. Does the religious belief identified in Question #1 prevent you from receiving other vaccines or just the COVID -19 vaccine?**

In the past it would have prevented me from receiving other vaccines. At the time I received those vaccines however, I had not evolved to the current level I am today in my spiritual journey.

**If your religious belief prevents you from receiving some but not all other vaccines, please identify which vaccines you can take and which ones you cannot receive, and explain the reason for the difference.**

I can receive all vaccines except those that involve the use of human fetal cell lines in the developing, manufacturing or testing of their vaccines, or those that I do not feel God's peace about. Anything that contradicts my faith and conviction in God affects how I approach my medical care. As 1 Corinthians 10:31 states "Whether therefore ye eat, or drink, or whatsoever ye do, do all to the glory of God".

**10. With respect to the religious belief that is preventing you from receiving the COVID-19 vaccination:**

    a.  When did you first come to believe this? The religious belief to not defile my body with things I deem unclean, to honor the sanctity of human life and to not act until I have God's peace started and grew more strongly in my late 20s.

b. Has your religious belief that is preventing you from receiving COVID-19 vaccination changed over time? If yes, please explain how it has changed, when it changed and why.

My religious belief to not defile my body with things I deem unclean, to honor the sanctity of human life and to not act until I have God's peace has changed over time. When I was younger I was not as spiritually sound as I am today. Over the past few years I have become more conscious about keeping my mind and body pure and honoring God with my life. In my late 20s I made the decision to re-dedicate my life to God. My church at the time had a large influence on that. Also, my life circumstances at the time caused me to cling closer to GOD and trust more in HIS word. Throughout my life different pastors and spiritual leaders have told me about my impact and how God wants to use me. It is my desire to have a closer walk with God. With this desire has come a paradigm shift in mindset.

**11b.**
Dear CHA,

I am a Physician at East Cambridge and Cambridge Pediatrics locations. I am appreciative of my position here at CHA.

I have been a Christian ever since I can remember. I grew up in the church. At a very young age, I would attend Mt. Olive Baptist Church with my grandparents. My grandfather was a Deacon there. I sang in the church choir. When I moved to Chicago, my family joined South Side Unity Center of Christianity where I also continued to sing in the choir. In addition, I taught Sunday School to the younger children that would attend, and would deliver the sermons during Youth Sundays. In my 20s, I became a member of World Changers Church International and re-dedicated myself to God and got re-baptized. I wanted to give my life to Christ during my adult years as a personal decision, and not one made for me by my family. It was during this time in my life that I developed a stronger conviction of God's love for me. I delved more into HIS word and developed a stronger relationship with him. My spiritual journey continues to evolve. Through prayer, meditation and observing the Sabbath, I feel a deeper connection to God.

Throughout my life I see how God's hand has led and guided me. In difficult situations, God has kept me. I rely on his guidance and providence daily. I am appreciative of God's plan for my life. I do not want to make decisions that go against HIS will and thus I seek to know and remain in HIS will.

I believe in the sanctity of human life and believe our bodies are made to be holy and pure before the LORD. In Leviticus 19:2 (KJV), "Ye shall be holy: for I the LORD your God am holy". My body belongs to God.

I am made in HIS image and likeness (Genesis 1:27). I firmly believe that because the development, manufacturing, or testing of COVID-19 vaccines involved the use of cell lines from tissues of aborted fetuses, it renders them unclean. For instance, Johnson and Johnson has acknowledged using cell line PER.C6. Psalm 127:3 (KJV) states "Lo, children are an heritage of the LORD: and the fruit of the womb is his reward". In 2 Cor 6:17, it states "Wherefore come out from among them, and be ye separate, saith the Lord, and touch

**not the unclean thing; and I will receive you".** Thus, taking any of the available COVID vaccinations will defile my body as a temple of God, and cause me to violate God's word of keeping my body holy and pure before HIM. **1 Cor 3:17 (KJV) states "If any man defile the temple of God, him shall God destroy; for the temple of God is holy, which temple ye are."**

So that I may serve and honor the God of my understanding in the way I believe I am led to, I am requesting religious exemption/accommodation under Title VII of the federal Civil Rights Act of 1964, in regards to the COVID vaccination.

Thank you in advance for your consideration.

Respectfully yours,

*Juliana N. Anyanwu MD, MPH, FAPP*

Juliana N. Anyanwu, MD, MPH, FAAP

**References:**
The Bible.
https://www.eeoc.gov/statutes/title-vii-civil-rights-act-1964
https://www.chop.edu/centers-programs/vaccine-education-center/vaccine-ingredients/fetal-tissues

Juliana N. Anyanwu
B Museum Way, Apt 1306
Cambridge, MA 02141

November 4, 2021

To Whom It May Concern:

On October 1, 2021, I notified CHA of the conflict between my sincerely held
religious beliefs and CHA's COVID-19 vaccination requirement. I was asked to
meet with a panel on October 15, 2021, at 1:15 pm to discuss my request for
religious accommodation. I received an email at 6:11 pm that day in regards
to that meeting.

In that email, there was an attached letter from Andreia Dos Santos, which
stated "Dear Mr./Ms. Anyanwu...You met with the interdisciplinary panel on
October 15, 2021. We thank you for providing us with the requested
documentation and meeting with us. After reviewing your documentation and
the information, you provided during our panel meeting, we have determined
that we will not be able to offer you an exemption."

I am requesting an explanation as to why my religious accommodation
was denied. I am also writing to appeal your denial.

The Equal Employment Opportunity Commission (EEOC), "enforces Title VII
of the Civil Rights Act of 1964 (Title VII), which prohibits employment
discrimination based on religion. This includes a right for job applicants and
employees to request an exception, called a religious or reasonable
accommodation, from an employer requirement that conflicts with their
sincerely held religious beliefs, practices, or observances."

Please be directed to Title VII of the U.S. Civil Rights Act, as interpreted by
the EEOC, in Section 12: Religious Discrimination:
https://www.eeoc.gov/laws/guidance/section-12-religious-discrimination

During the panel meeting on October 15th, when asking about the objective
criteria CHA was using for questioning in regards to my religious beliefs,
religious exemption Felicia Sullivan, JD, responded stating CHA was using 3
criteria:
1) Whether a belief is religious in nature
2) Whether sincerely held
3) Undue burden on CHA

1). Religious in nature:

According to the EEOC:

"Title VII defines "religion" to include "all aspects of religious observance and practice as well as belief," not just practices that are mandated or prohibited by a tenet of the individual's faith. [18]

A belief is "religious" for Title VII purposes if it is "religious" in the person's "own scheme of things," i.e., it is a "sincere and meaningful" belief that "occupies a place in the life of its possessor parallel to that filled by . . . God."[21] The Supreme Court has made it clear that it is not a court's role to determine the reasonableness of an individual's religious beliefs, and that "religious beliefs need not be acceptable, logical, consistent, or comprehensible to others in order to merit First Amendment protection."[22] An employee's belief, observance, or practice can be "religious" under Title VII even if the employee is affiliated with a religious group that does not espouse or recognize that individual's belief, observance, or practice, or if few – or no – other people adhere to it. [23] Courts have looked for certain features to determine if an individual's beliefs can be considered religious. As one court explained: ""First, a religion addresses fundamental and ultimate questions having to do with deep and imponderable matters. Second, a religion is comprehensive in nature; it consists of a belief-system as opposed to an isolated teaching. Third, a religion often can be recognized by the presence of certain formal and external signs.'"[27] we do not review the motives or reasons for holding the belief in the first place."[41]"

Please also see cases on this matter:

"Thomas, 450 U.S. at 714 ("The determination of what is a 'religious' belief or practice is more often than not a difficult and delicate task. . . . However, the resolution of that question is not to turn upon a judicial perception of the particular belief or practice in question; religious beliefs need not be acceptable, logical, consistent, or comprehensible to others in order to merit First Amendment protection.");

Burwell v. Hobby Lobby Stores, Inc., 573 U.S. 682, 725 (2014) ("[I]t is not for us to say that the line [employee] drew [between work that was consistent with religious beliefs and work that was morally objectionable] was an unreasonable one." (quoting Thomas, 450 U.S. at 715)).

United States v. Meyers, 906 F. Supp. 1494, 1499 (D. Wyo. 1995) (observing that the threshold for establishing the religious nature of beliefs is low; under the First Amendment, "if there is any doubt about whether a particular set of beliefs constitutes a religion, the Court will err on the side of freedom and find that the beliefs are a religion . . . [because the country's] founders were animated in large part by a desire for religious liberty")"

2). Sincerely held:

According to the EEOC:

"Whether or not a religious belief is sincerely held by an applicant or employee is rarely at issue in many types of Title VII religious claims. [39] Like the religious nature of a belief, observance, or practice, the sincerity of an employee's stated religious belief is usually not in dispute and is "generally presumed or easily established."[40] Further, the Commission and courts "are not and should not be in the business of deciding whether a person holds religious beliefs for the 'proper' reasons."

"For example, although prior inconsistent conduct is relevant to the question of sincerity, an individual's beliefs – or degree of adherence – may change over time, and therefore an employee's newly adopted or inconsistently observed religious practice may nevertheless be sincerely held.[48] Similarly, an individual's belief may be to adhere to a religious custom only at certain times, even though others may always adhere,[49] or, fearful of discrimination, he or she may have forgone his or her sincerely held religious practice during the application process and not revealed it to the employer until after he or she was hired or later in employment.[50] An employer also should not assume that an employee is insincere simply because some of his or her practices deviate from the commonly followed tenets of his or her religion, or because the employee adheres to some common practices but not others.[51] As noted, courts have held that "Title VII protects more than . . . practices specifically mandated by an employee's religion."[52]"

3. Undue hardship:
According to the EEOC:
"Overview: Title VII requires an employer, once on notice, to reasonably accommodate an employee whose sincerely held religious belief, practice, or observance conflicts with a work requirement, unless providing the accommodation would create an undue hardship. [203] The Title VII "undue hardship" defense is defined differently than the "undue hardship" defense for disability accommodation under the Americans with Disabilities Act (ADA). Title VII's undue hardship defense to providing religious accommodation has been defined by the Supreme Court as requiring a showing that the proposed accommodation in a particular case poses "more than a de minimis" cost or burden. This is a lower standard for an employer to meet than undue hardship under the ADA, which is defined in that statute as "an action requiring significant difficulty or expense."[204]
"Title VII requires otherwise-neutral policies to give way to the need for an accommodation."[205] An individual alleging the denial of a religious accommodation is generally seeking an adjustment to a neutral work rule that infringes on the employee's ability to practice his religion. [206] "The accommodation requirement is 'plainly intended to relieve individuals of the burden of choosing between their jobs and their religious convictions, where such relief will not unduly burden others."

"To prove undue hardship, the employer will need to demonstrate how much cost or disruption the employee's proposed accommodation would involve. [246] An employer cannot rely on hypothetical hardship when faced with an employee's religious obligation that conflicts with scheduled work, but rather should rely on objective information. [247] A mere assumption that many more people with the same religious practices as the individual being accommodated may also seek accommodation is not evidence of undue hardship".

"To establish undue hardship, the employer must demonstrate that the accommodation would require the employer "to bear more than a de minimis cost."[248] However, "[u]ndue hardship is something greater than hardship."[249] Factors to be considered include "the identifiable cost in relation to the size and operating costs of the employer".

"Under Title VII, an employer should thoroughly consider all possible reasonable accommodations, including telework and reassignment."

I look forward to your response.

Sincerely,

*(signature)* MD, MPH, FAAP

Juliana N. Anyanwu, MD, MPH, FAAP



**Calvary Chapel** Kaneohe

Phone: 808.262.8800
Fax: 808.262.8809
www.calvarychapelkaneohe.com
www.JDFarag.org

September 27, 2021

To Whom It May Concern:

I am writing on behalf of Juliana Ndidi Anyanwu, a member of our online congregation at Calvary Chapel Kaneohe, in Hawaii, regarding their religious conviction against forced vaccines.

We do not wish to be labeled as anti-vaccine or anti-science, however, the well-documented process of vaccines developed from animal and aborted human fetal tissue has compelled us to stand by our congregants who refuse to comply with mandatory vaccinations.

We strongly support their deeply held Biblical conviction as a believer in, and follower of Jesus Christ and any of our congregants to resist the pressure for vaccinations.

We are convinced that the nature of many other contaminants within vaccines should be a reason to grant exemptions to believers whose bodies are, as the Scripture states, the "temple of the Lord."

- 1 Corinthians 3:16-17 - "Don't you know that you yourselves are God's temple and that God's Spirit dwells in your midst? If anyone destroys God's temple, God will destroy that person; for God's temple is sacred, and you together are that temple."
- 2 Corinthians 7:1 - "Therefore, since we have these promises, dear friends, let us purify ourselves from everything that contaminates body and spirit, perfecting holiness out of reverence for God."

We must follow the Word of God and we also exhort others to a conscientious objection to these vaccines. Yet, our deep love and care for others makes us determined to seek alternatives that ensure others' safety in each individual case, and also ensure that such alternatives do not violate one's freedom of choice.

We thank you for granting this religious exemption and as such respecting religious freedom.

Sincerely,

J.D. Farag
Senior Pastor
Calvary Chapel Kaneohe

JDF:gl

 

## Religious Exemption Application Form

At Cambridge Health Alliance, our first priority is the safety of our patients and staff. To continue to protect our community, as COVID-19 cases increase across Massachusetts and nationwide, all CHA staff will be required to be fully vaccinated by October 18, 2021. Throughout the pandemic, we have taken every possible step to ensure the wellbeing of our patients and employees and a vaccine mandate will help to provide the safest environment for our staff and the individuals and communities we serve.

Please be aware that individuals that may have beliefs and opinions regarding COVID-19 vaccination will not be granted a religious exemption. A religious exemption from the vaccination requirement will be approved only for a sincerely held belief precluding COVID-19 vaccination that is religious in nature.

To request a religious exemption from COVID-19 vaccination, this form and a letter from your religious leader must be completed and submitted to vaxexemptreq@challiance.org by October 1, 2021. Failure to accurately and completely provide the information requested by the deadline may result in the request being denied.

1. Please describe the religious belief that is preventing you from receiving COVID-19 vaccination.

see attached

2. Have you received a religious exemption from CHA's flu vaccination requirement?
☐ Yes  ☒ No
If yes, is the religious belief that prevented you from receiving the flu vaccine the same as the religious belief that is currently preventing you from receiving the COVID-19 vaccination? ☐ Yes   ☐ No

3. Have you received a religious exemption from any other vaccine requirement in the past three years?
☐ Yes  ☒ No
If yes, please provide additional details, including which vaccine(s) the exemption was for, when you were granted the exemption, the religious belief underlying the exemption request and whether you were employed by CHA at the time.

4. Have you ever been approved for any other type of religious accommodation during your employment with CHA?

☐ Yes    ☒ No

If yes, please describe the accommodation that was approved, when this occurred and whether the accommodation is still in effect.

5. Does the religious belief that prevents you from receiving COVID vaccination derive from a recognized religion?

☒ Yes    ☐ No

If yes, please answer the following questions:

a. Please provide the name of the religion: *Christianity*

b. Please indicate when you first began to practice this religion: *I was born into it.*
   *All of my life I have been a Christian.*

c. Do you belong to an organization or group affiliated with this religion (e.g., church, mosque, synagogue other group, etc.)? ☒ Yes    ☐ No
   If yes, indicate when you first affiliated with organization or group: *2006*

   If yes, also provide the following information regarding the organization or group:
   Name: *World Changers Church International*

   Address: *2500 Burdett Rd. College Park, GA 30349*

   Phone Number: *770 210 5700*

   Website: *www.worldchangers.org*

6. Does the religious belief identified in Question #1 prevent you from receiving other vaccines or just the COVID-19 vaccines?

☐ All other vaccines    ☒ Some but not all other vaccines    ☐ Only the COVID-19 vaccines?

If your religious belief prevents you from receiving only the COVID-19 vaccines, please explain why. (For example, if there is something about the way that the currently approved COVID-19 vaccines are manufactured that prevents you from receiving it, please identify what that is.)

If your religious belief prevents you from receiving some but not all other vaccines, please identify which vaccines you can receive and which ones you cannot receive, and explain the reason for the difference.

See attached

7. Did you receive the flu vaccine for the most recent flu season? ☐ Yes    ☒ No
   If no, when did you last receive the flu vaccine? *2020 flu season*

8. Have you received other vaccines in the past? ☒ Yes    ☐ No
   If yes, please identify the vaccines you have received most recently and when you received them.
   *2020 flu vaccine*

9. Are there other aspects of your religious belief that impact or prevent you from receiving medical care?
   ☐ Yes    ☒ No

If yes, please explain

10. With respect to the religious belief that is preventing you from receiving COVID-19 vaccination:

   a. When did you first come to believe this?

   *See attached*

   b. Has your religious belief that is preventing you from receiving COVID-19 vaccination changed over time?

   ☒ Yes · ☐ No

   If yes, please explain how it has changed, when it changed and why.

   *see attached*

11. Please submit your letter from your religious leader (or organization equivalent to religious organization) supporting your belief that your religion prevents you from receiving COVID-19 vaccination. You may also provide additional documentation supporting your application for exemption from the COVID-19 vaccination requirement based on a sincerely held religious belief. Additional documentation may include but is not limited to the following:

   a. Books, pamphlets, text, or other materials that support your religious belief that you are prevented from receiving COVID-19 vaccination.

   b. A personal statement that provides a more in depth description of your belief, its religious nature and why it prevents you from receiving COVID-19 vaccination.

   c. A statement from someone who is familiar with your beliefs confirming how your religious belief prevents you from receiving COVID-19 vaccination.

   Any additional documentation that you submit will be considered in conjunction with your exemption request. **Please note that the documentation should be submitted at the same time as your request in order to avoid delays in review and processing your request for exemption.**

By signing below, you certify that the information provided in this form is both complete and accurate and you understand that any intentional misrepresentation contained in this request may result in disciplinary action, including employment termination.

Signature: *Juliana N. Anyanwu*

Printed Name: JULIANA N. ANYANWU

Date: 9/29/21

**1. Please describe the religious belief that is preventing you from receiving COVID-19 vaccination.**

I am a Christian. I take time to get still and hear God's voice. Psalms 46:10 (KJV) says Be still and know that I am GOD. Proverbs 3:5-6 (KJV) states to⁵ Trust in the LORD with all thine heart; and lean not unto thine own understanding.⁶ In all thy ways acknowledge him, and he shall direct thy paths. That is how I live my life. I have always trusted and continue to trust in God's guidance. I do not want to go against it. God has not placed it in my heart to get the vaccine. Furthermore, the development and/or testing of COVID-19 vaccines involved using cell lines from tissues of aborted human fetuses. I feel that it is unclean and I do not believe in incorporating anything which I feel is unclean into my body. Romans 12:1 says I beseech you therefore, brethren, by the mercies of God, that ye present your bodies a living sacrifice, holy, acceptable unto God, which is your reasonable service.

In the book of Daniel (Dan 1:8 KJV) it states "But Daniel purposed in his heart that he would not defile himself with the portion of the king's meat, nor with the wine which he drank. Therefore he requested of the prince of the eunuchs that he might not defile himself". I too am requesting not to defile myself with the vaccinations.

**6. Does the religious belief identified in Question #1 prevent you from receiving other vaccines or just the COVID -19 vaccine?**

In the past it would have prevented me from receiving other vaccines. At the time I received those vaccines however, I had not evolved to the current level I am today in my spiritual journey.

**If your religious belief prevents you from receiving some but not all other vaccines, please identify which vaccines you can take and which ones you cannot receive, and explain the reason for the difference.**

I can receive all vaccines except those that involve the use of human fetal cell lines in the developing, manufacturing or testing of their vaccines, or those that I do not feel God's peace about. Anything that contradicts my faith and conviction in God affects how I approach my medical care. As 1 Corinthians 10:31 states "Whether therefore ye eat, or drink, or whatsoever ye do, do all to the glory of God".

**10. With respect to the religious belief that is preventing you from receiving the COVID-19 vaccination:**

a. **When did you first come to believe this?** The religious belief to not defile my body with things I deem unclean, to honor the sanctity of human life and to not act until I have God's peace started and grew more strongly in my late 20s.

b. Has your religious belief that is preventing you from receiving COVID-19 vaccination changed over time? If yes, please explain how it has changed, when it changed and why.

My religious belief to not defile my body with things I deem unclean, to honor the sanctity of human life and to not act until I have God's peace has changed over time. When I was younger I was not as spiritually sound as I am today. Over the past few years I have become more conscious about keeping my mind and body pure and honoring God with my life. In my late 20s I made the decision to re-dedicate my life to God. My church at the time had a large influence on that. Also, my life circumstances at the time caused me to cling closer to GOD and trust more in HIS word. Throughout my life different pastors and spiritual leaders have told me about my impact and how God wants to use me. It is my desire to have a closer walk with God. With this desire has come a paradigm shift in mindset.

**11b.**

Dear CHA,

I am a Physician at East Cambridge and Cambridge Pediatrics locations. I am appreciative of my position here at CHA.

I have been a Christian ever since I can remember. I grew up in the church. At a very young age, I would attend Mt. Olive Baptist Church with my grandparents. My grandfather was a Deacon there. I sang in the church choir. When I moved to Chicago, my family joined South Side Unity Center of Christianity where I also continued to sing in the choir. In addition, I taught Sunday School to the younger children that would attend, and would deliver the sermons during Youth Sundays. In my 20s, I became a member of World Changers Church International and re-dedicated myself to God and got re-baptized. I wanted to give my life to Christ during my adult years as a personal decision, and not one made for me by my family. It was during this time in my life that I developed a stronger conviction of God's love for me. I delved more into HIS word and developed a stronger relationship with him. My spiritual journey continues to evolve. Through prayer, meditation and observing the Sabbath, I feel a deeper connection to God.

Throughout my life I see how God's hand has led and guided me. In difficult situations, God has kept me. I rely on his guidance and providence daily. I am appreciative of God's plan for my life. I do not want to make decisions that go against HIS will and thus I seek to know and remain in HIS will.

I believe in the sanctity of human life and believe our bodies are made to be holy and pure before the LORD. In Leviticus 19:2 (KJV), "Ye shall be holy: for I the LORD your God am holy". My body belongs to God.

I am made in HIS image and likeness (Genesis 1:27). I firmly believe that because the development, manufacturing, or testing of COVID-19 vaccines involved the use of cell lines from tissues of aborted fetuses, it renders them unclean. For instance, Johnson and Johnson has acknowledged using cell line PER.C6. Psalm 127:3 (KJV) states "Lo, children are an heritage of the LORD: and the fruit of the womb is his reward". In 2 Cor 6:17, it states "Wherefore come out from among them, and be ye separate, saith the Lord, and touch

**not the unclean thing; and I will receive you"**. Thus, taking any of the available COVID vaccinations will defile my body as a temple of God, and cause me to violate God's word of keeping my body holy and pure before HIM. 1 Cor 3:17 (KJV) states **"if any man defile the temple of God, him shall God destroy; for the temple of God is holy, which temple ye are."**

So that I may serve and honor the God of my understanding in the way I believe I am led to, I am requesting religious exemption/accommodation under Title VII of the federal Civil Rights Act of 1964, in regards to the COVID vaccination.

Thank you in advance for your consideration.

Respectfully yours,

*Juliana N. Anyanwu MD, MPH, FAAP*

Juliana N. Anyanwu, MD, MPH, FAAP

**References:**
The Bible.
https://www.eeoc.gov/statutes/title-vii-civil-rights-act-1964
https://www.chop.edu/centers-programs/vaccine-education-center/vaccine-ingredients/fetal-tissues

# EXHIBIT A

# EXHIBIT B

 **Gmail**

Nicole Curcis <nicole@chamberslawoffice.com>

## EEOC Determination and Notice of Rights
2 messages

**MARIANNE MONTLER** <MARIANNE.MONTLER@eeoc.gov>        Wed, Oct 2, 2024 at 1:07 PM
To: "andrea@chamberslawoffice.com" <andrea@chamberslawoffice.com>

## U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

**New York District Office**
33 Whitehall St, 5th Floor
New York, NY 10004.
(929) 506-5270
Website: www.eeoc.gov.

### DETERMINATION AND NOTICE OF RIGHTS

(This Notice replaces EEOC FORMS 161, 161-A & 161-B)

Issued On: 10/02/2024

**To:** Juliana Anyanwu

andrea@chamberslawoffice.com

**Cc:** CAMBRIDGE HEALTH ALLIANCE

aesposito@littler.com

Charge No: 16C-2022-01467

EEOC Representative and email:      MARIANNE MONTLER

Supervisory Investigator

marianne.montler@eeoc.ogv

### DETERMINATION OF CHARGE

The EEOC issues the following determination: The EEOC will not proceed further with its investigation and makes no determination about whether further investigation would establish violations of the statute. This does not mean the claims have no merit. This determination does not certify that the respondent is in compliance with the statutes. The EEOC makes no finding as to the merits of any other issues that might be construed as having been raised by this charge.

The EEOC has adopted the findings of the state or local fair employment practices agency that investigated your charge.

### NOTICE OF YOUR RIGHT TO SUE

This is official notice from the EEOC of the dismissal of your charge and of your right to sue. If you choose to file a lawsuit against the respondent(s) on this charge under federal law in federal or state court, **your lawsuit must be filed WITHIN 90 DAYS of your receipt of this notice.** Receipt generally occurs on the date that you (or your representative) view this document. You should keep a record of the date you received this notice. Your right to sue based on this charge will be lost if you do not file a lawsuit in court within 90 days. (The time limit for filing a lawsuit based on a claim under state law may be different.)

If you file suit, based on this charge, please send a copy of your court complaint to this office.

On behalf of the Commission,

Digitally Signed By:Yaw Gyebi, Jr.
10/02/2024

Yaw Gyebi, Jr.
District Director

Please retain this notice for your records.

## INFORMATION RELATED TO FILING SUIT

## UNDER THE LAWS ENFORCED BY THE EEOC

*(This information relates to filing suit in Federal or State court **under Federal law**. If you also plan to sue claiming violations of State law, please be aware that time limits may be shorter and other provisions of State law may be different than those described below.)*

### IMPORTANT TIME LIMITS – 90 DAYS TO FILE A LAWSUIT

If you choose to file a lawsuit against the respondent(s) named in the charge of discrimination, you must file a complaint in court **within 90 days of the date you *receive* this Notice**. Receipt generally means the date when you (or your representative) opened this email or mail. You should **keep a record of the date you received this notice**. Once this 90-day period has passed, your right to sue based on the charge referred to in this Notice will be lost. If you intend to consult an attorney, you should do so promptly. Give your attorney a copy of this Notice, and the record of your receiving it (email or envelope).

If your lawsuit includes a claim under the Equal Pay Act (EPA), you must file your complaint in court within 2 years (3 years for willful violations) of the date you did not receive equal pay. This time limit for filing an EPA lawsuit is separate from the 90-day filing period under Title VII, the ADA, GINA, the ADEA, or the PWFA referred to above. Therefore, if you also plan to sue under Title VII, the ADA, GINA, the ADEA or the PWFA, in addition to suing on the EPA claim, your lawsuit must be filed within 90 days of this Notice and within the 2- or 3-year EPA period.

Your lawsuit may be filed in U.S. District Court or a State court of competent jurisdiction. Whether you file in Federal or State court is a matter for you to decide after talking to your attorney. You must file a "complaint" that contains a short statement of the facts of your case which shows that you are entitled to relief. Filing this Notice is not enough. For more information about filing a lawsuit, go to https://www.eeoc.gov/employees/lawsuit.cfm.

### ATTORNEY REPRESENTATION

For information about locating an attorney to represent you, go to:

https://www.eeoc.gov/employees/lawsuit.cfm.

In very limited circumstances, a U.S. District Court may appoint an attorney to represent individuals who demonstrate that they are financially unable to afford an attorney.

### HOW TO REQUEST YOUR CHARGE FILE AND 90-DAY TIME LIMIT FOR REQUESTS

There are two ways to request a charge file: 1) a Freedom of Information Act (FOIA) request or 2) a "Section 83" request. You may request your charge file under either or both procedures. EEOC can generally respond to Section 83 requests more promptly than FOIA requests.

Since a lawsuit must be filed within 90 days of this notice, please submit your FOIA and/or Section 83 request for the charge file promptly to allow sufficient time for EEOC to respond and for your review.

**To make a FOIA request for your charge file**, submit your request online at https://eeoc.arkcase.com/foia/ portal/login (this is the preferred method). You may also submit a FOIA request for your charge file by U.S. Mail by submitting a signed, written request identifying your request as a "FOIA Request" for Charge Number 16C-2022-01467 to the District Director at Yaw Gyebi, Jr., 33 Whitehall St 5th Floor, New York, NY 10004.

**To make a Section 83 request for your charge file**, submit a signed written request stating it is a "Section 83 Request" for Charge Number 16C-2022-01467 to the District Director at Yaw Gyebi, Jr., 33 Whitehall St 5th Floor, New York, NY 10004.

You may request the charge file up to 90 days after receiving this Notice of Right to Sue. After the 90 days have passed, you may request the charge file only if you have filed a lawsuit in court and provide a copy of the court complaint to EEOC.

For more information on submitting FOIA requests, go to https://www.eeoc.gov/eeoc/foia/index.cfm.

For more information on submitted Section 83 requests, go to https://www.eeoc.gov/foia/section-83-disclosure-information-charge-files.



image001.png
54K

---

**Nicole Curcis** <nicole@chamberslawoffice.com>                                    Wed, Oct 2, 2024 at 1:09 PM
To: "Richard Chambers Jr." <richard@chamberslawoffice.com>, Joe Spinale <joe@chamberslawoffice.com>, Matt Littleton <matt@chamberslawoffice.com>

Dr. Juliana Anyanwu's RTS from EEOC
[Quoted text hidden]

ate Filed 11/7/2024 1:07 PM
uperior Court - Middlesex
ocket Number

Nicole Curcis

Accounting Department Manager

**Chambers Law Office**

220 Broadway, Suite 404

Lynnfield, Massachusetts 01940

Telephone: 781-581-2031

Fascimile: 781-581-8449

This message is a confidential communication from Chambers Law Office. The information contained in this electronic communication, and any attachments, is solely for use by the intended recipient. If you are not the intended recipient or a person responsible to the intended recipient, please notify us immediately by telephone at (781) 581-2031. Any review, reading, dissemination, distribution or copying of this electronic communication by anyone other than the intended recipient is strictly prohibited and unauthorized. It may also be deemed a tortious interference with business relationships as well as in violation of privacy, privilege, and confidentiality laws and authorities. The review of this information by any individual other than the intended recipient shall not constitute a waiver of attorney-client confidentiality, work product, business and/or other doctrines, and/or any other applicable privileges.



**image001.png**
54K